UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

Eastern District of Kentucky
FILED
NOV 2 0 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 2006-62 (WOB)

TIM IRWIN, Derivatively and
on Behalf of Nominal Defendant,
Omnicare, Inc.                                        PLAINTIFF

VS.             MEMORANDUM OPINION AND ORDER

JOEL F. GEMUNDER, ET AL                               DEFENDANTS

This matter is before the court on the motions of defendants to dismiss (Doc. #13).

The court held oral argument in this matter on Thursday, November 16, 2006. Jennifer Sherrill and Bradford Bollman represented the plaintiff. Harvey Kurzweil, James Smith, Bill Conway, and William Robinson represented the individual defendants. Gerald Dusing and Mark Kobasuk represented nominal defendant Omnicare, Inc. Court reporter Shandy Edhe recorded the proceedings.

### Analysis

In a stockholder derivative suit such as this, "a stockholder asserts a cause of action belonging to the corporation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Because directors are empowered to manage, or direct the management of, the business and affairs of the corporation, "the right of a stockholder to prosecute a derivative suit is limited

to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Id.* (citation omitted).

Fed. R. Civ. P. 23.1 embodies this procedural demand requirement:

> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation . . ., the corporation or association having failed to enforce a right which may properly be asserted by it, *the complaint shall be verified and shall allege . . . with particularity the efforts, if any, made by plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.*

*Id.* (emphasis added).

The substantive demand requirements for a derivative suit are determined by the law of the state of incorporation. *Rales*, 634 A.2d at 932 n. 7 (citing *Kamen v. Kemper Fin. Serv., Inc.*, 500 U.S. 90 (1991)). Here, the applicable law is that of Delaware, Omnicare's place of incorporation.

Plaintiff acknowledges that no demand was made on Omnicare's Board of Directors in this case. The parties further agree that the standard set forth in *Rales* applies to the determination of whether demand on the Omnicare board is excused. That is because *Rales* applies where the derivative action does not challenge any specific decision of the board but where it instead challenges a

2

*failure* to act, such as a failure of oversight as is alleged here, as well as individual insider trading claims *Id.* at 934 n. 9. *See, e.g., Guttman v. Huang*, 823 A.2d 492, 499-500 (Del. Ch. 2003) (applying *Rales* to similar failure of oversight and insider trading claims).

The *Rales* "futility" exception requires the court to determine "whether or not the *particularized factual allegations* of a derivative stockholder complaint create a *reasonable doubt* that, as of the time the complaint is filed, the board of directors could have properly exercised its *independent and disinterested* business judgment in responding to a demand." *Id.* at 934 (emphasis added).

"Mere notice pleading is insufficient to meet the plaintiff's burden to show demand excusal in a derivative case." *Guttman*, 823 A.2d at 499 (citation omitted). *See also Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (stating that pleading requirements for derivative complaint are "stringent" and "differ substantially" from the permissive notice pleadings governed by Rule 8; a "prolix complaint larded with conclusory language" does not meet these standards).

Based on these standards, plaintiff's failure to make a demand will be excused for futility only if the amended complaint states with particularity facts which raise a reasonable doubt as to whether a *majority* (five) of the members of Omnicare's Board

3

of Directors were either "interested" or "lacked independence."

### A. "Interested" Board Members

A director is considered "interested" where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders. *Rales*, 634 A.2d at 936 (citations omitted). "Directorial interest also exists where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders. In such circumstances, a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision." *Id.*

Further, "if the directors face a 'substantial likelihood' of personal liability, their ability to consider a demand impartially is compromised under *Rales*, excusing demand." *Guttman*, 823 A.2d at 501 (citations omitted). The threat of personal liability will be influenced significantly if the corporate charter contains an exculpatory charter provision authorized by 8 Del. C. § 102(b)(7). *Id.* Section 102(b)(7) permits a Delaware corporation to include in its certificate of incorporation a provision that relieves directors from personal liability for monetary damages for a breach of fiduciary duty, except for acts or omissions involving bad faith, intentional misconduct, and breach of the duty of loyalty or a knowing

4

violation of the law. Omnicare's certificate of incorporation contains such a provision. (Shufflebarger Decl. Exh. D at 6)

Thus, a "serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts." *Guttman*, 823 A.2d at 501 (italics in original).

### 1. Insider Trading Claims

At the relevant times, the Omnicare board was comprised of nine members: Gemunder, Froesel, Hutton, Crotty, Erhart, Laney, Lindell, Timoney, and Wallman.[1]

Plaintiff alleges that three inside directors -- Gemunder, Froesel, and Hutton -- face personal liability because they possessed "inside" information and sold some shares of their Omnicare stock during the relevant period. (Am. Compl. ¶¶ 108-112) The amended complaint alleges generally that, by virtue of their positions at Omnicare, these defendants knew that the company was not doing as well as was portrayed publicly. (Am. Compl. ¶¶86-90) The amended complaint further sets forth the alleged "insider" stock sales made by each of these defendants.

However, the complaint does *not* allege with particularity facts that show "that each sale by each individual defendant was entered into and completed on the basis of, and because of,

---

[1] Five of these directors (Crotty, Erhart, Lindell, Timoney, and Wallman) are outside directors. The other four (Gemunder, Froesel, Hutton, and Laney) are not.

5

adverse material non-public information." *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *11 (Del. Ch. Sept. 30, 2003) (citation omitted). Indeed, the complaint fails to allege the sort of facts which in *Rattner* were deemed material to stating a "substantial" threat of liability for insider trading:

> The Amended Complaint is also devoid of any particularized facts that could lead to the inference that the timing of the trades reflected the Selling Defendants' impermissible insider trading. The Amended Complaint contains no particularized facts regarding the timing of the Director Defendants' trades in relation to permitted trading periods; while the pattern observed does reflect trading activity on behalf of the Director Defendants after the release of allegedly misleading statements, no particularized allegation of the Amended Complaint answers whether this temporal proximity was in fact part of the Company's practice to prevent Company insiders from improperly benefitting from informational asymmetries.

*Id.* at *10.

Here, plaintiff does not allege what information each defendant possessed that prompted the sales of stock in question. In the absence of such facts, courts have held that sales of even significant shares of a director's stock will not create a "substantial' threat of personal liability for insider trading. *See Guttman*, 823 A.2d at 504 (where complaint failed to address whether directors traded shares because options were expiring or because restrictions on liquidity had ended, fact that two directors sold large portions of their stock does not support conclusion that they face real threat of liability).

Moreover, even if the allegations of the amended complaint

6

could be construed to raise a substantial threat of personal liability for insider trading, those allegations pertain only to three of the nine members of Omnicare's board. Thus, the claims would not impact a *majority* of the board and would not therefore excuse the failure to make a pre-litigation demand. *See, e.g., McSparran v. Larson*, No. 04-C-0041, 2006 WL 2052057, at *5 (N.D. Ill. May 3, 2006) (holding that since allegation of wrongdoing "does not apply to a majority of the directors, we need not consider it since demand futility arises only when a majority of the directors are interested in the outcome of the litigation").

### 2. Oversight ("*Caremark*") Claims

Plaintiff's alternative theory as to why the Omnicare directors are "interested" such that they could not impartially consider a pre-suit demand is that they breached their duties of care by failing to adequately supervise the conduct of Omnicare employees and "to assure that a reliable system of financial controls was in place and functioning effectively." (Am. Compl. ¶ 162) This theory was dealt with extensively in *In re Caremark Int'l Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996), in which the court stated:

> In order to show that the Caremark directors breached their duty of care by failing adequately to control Caremark's employees, plaintiffs would have to show either (1) that the directors knew or (2) should have known that violation of law were occurring and, in either event, (3) that the directors took no steps in a good faith effort to prevent or remedy that situation, and (4) that such failure proximately resulted in the losses complained of . . . .

7

*Id.* at 971. The court further explained:

> Generally where a claim of directorial liability for corporate loss is predicated upon ignorance of liability creating activities within the corporation, . . . in my opinion *only a sustained or systemic failure of the board to exercise oversight -- such as an utter failure to attempt to assure a reasonable information and reporting system exists -- will establish the lack of good faith that is a necessary condition to liability.* Such a test of liability -- lack of good faith as evidenced by sustained or systemic failure of a director to exercise reasonable oversight -- is quite high. But, a demanding test of liability in the oversight context is probably beneficial to corporate shareholders as a class, as it is in the board decision context, since it makes board service by qualified persons more likely, while continuing to act as a stimulus to *good faith performance of duty* by such directors.

*Id.* (some italics added). Reflecting this stringent standard, the *Caremark* court noted that this theory "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id.* at 967.

In *Stone v. Ritter*, - A.2d -, 2006 WL 3169168 (Del. Nov. 6, 2006), the Delaware Supreme Court recently endorsed *Caremark*'s stringent standard for articulating the necessary conditions for assessing director oversight liability. *Id.* at *6.

Here, the amended complaint does not allege particularized facts to support a claim that a majority of the Omnicare board was guilty of a "sustained failure to exercise their oversight function." *Id.* at 971.[2] Construed liberally, the only two

---

[2] Defendant Hodges was and is not a member of the Omnicare board, and thus the *Caremark* claim does not apply to her. For that matter, insofar as the demand futility analysis is concerned, her inclusion is irrelevant because the question at

defendants alleged to have had any direct involvement or knowledge in alleged wrongdoing are Gemunder and Froesel, two of the nine-member board.  The remaining allegations are wholly conclusory and do not state any specific facts as to the two remaining inside directors or, much less, the five outside directors.  Indeed, it is relevant in this regard that the only directors named as defendants in the related securities class actions are Gemunder and Froesel.  See Guttman, 823 A.2d at 504 (noting that securities complaint upon which derivative complaint was based "did not even name the NVIDIA outside directors as defendants").

As to the five outside directors, plaintiff alleges no specific facts as to how these defendants failed in their oversight duties; what controls or systems they failed to implement; or what specific knowledge they had or should have had that would have alerted them to the alleged wrongdoing.

The only effort plaintiff makes to identify specific failures by directors other than Gemunder or Froesel is to list the members of Omnicare's Audit Committee -- outside directors Erhart, Lindell, Timoney, and Wallman -- and allege that by virtue of their committee membership they "either knew of the financial manipulations or turned a blind eye to them."  (Am.

---

hand is whether a majority of the *board of directors* could have impartially considered a pre-suit demand.

Compl. ¶ 164) However, conclusory allegations regarding audit committee membership do not satisfy the pleading standards for showing that the director members are "interested" for purposes of demand futility. *See In re Cray Inc.*, 431 F. Supp. 2d 1114, 1128 (W.D. Wash. 2006) ("The relevant case law does not hold that a director is interested merely by virtue of sitting on an Audit Committee while the corporation faces accounting and audit irregularities.") (applying Delaware law); *Caviness v. Evans*, 229 F.R.D. 354, 359-60 (D. Mass. 2005) (similar).

Instead, in order to "demonstrate that the Audit Committee is interested as the result of a possible *Caremark* claim, Plaintiffs must provide 'particularized factual allegations' that the members face a 'materially detrimental impact' if the claim were to proceed." *In re Cray*, 431 F. Supp.2d at 1124 (citation omitted). Plaintiff here alleges only that the Audit Committee "did not have adequate controls in place to ensure that the Company's financial statements complied with GAAP." (Pl. Memo. Opp. at 17-18) However, plaintiff does not state what controls *were* in place and how they were deficient.

In *Guttman, supra*, the Delaware court found an absence of such specifics fatal to a futility claim:

> From the complaint, it is impossible to tell anything about the financial compliance systems in place at NVIDIA during the Contested Period. This is a void that could have been filled had the plaintiffs procured pertinent books and records. For all I know, the NVIDIA audit committee met six times a year for half-day sessions, was comprised entirely

10

> of independent directors, had retained a qualified and independent audit firm that performed no other services for the company, was given no notice of the alleged irregularities by either management or the audit firm, had paid its audit firm to perform professionally credible random tests of management's integrity in recording revenue and other important financial data, and could not have been expected to discover the accounting irregularities, even when exercising a good faith effort, because discovery required disclosure by management or uncovering by the auditors of conduct deep below the surface of the financial statements.
>
> I am, of course, not opining that NVIDIA's directors actually implemented an adequate system of financial controls. *What I am opining is that there are not well=pled factual allegations -- as opposed to wholly conclusory statements -- that the NVIDIA independent directors committed any culpable failure of oversight under the Caremark standard.*

*Guttman*, 823 A.2d at 507 (emphasis added).

For all of these reasons, the amended complaint here fails to allege particularized facts showing that a majority of the Omnicare board was "interested" so as to excuse plaintiff's failure to make a pre-suit demand.

### B. Independence of Board Members

"Independence" means "that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Rales*, 634 A.2d at 936 (quoting *Aronson v. Lewis*, 473 A.2d 805, 816 (1984)).

In the amended complaint, plaintiff alleges that the four inside directors lack independence by virtue of their positions, or former positions, within the Omnicare corporate organization. Assuming this is true, however, plaintiff still must plead

11

particularized facts demonstrating a lack of independence of at least one of the outside directors in order to show that a total of five directors --a majority of the board -- lack independence.

Plaintiff's sole attempt to meet this burden is to allege that outside director Timoney lacks independence because he sits on the board of directors of Chemed Corporation along with other Omnicare directors Hutton, Gemunder, Erhart and Laney. (Am. Compl. ¶ 171) However, bare allegations of overlapping board memberships and outside business relationships do not satisfy the pleading standard for showing directors' lack of independence. *See, e.g., McSparran v. Larson*, No. 04-C-0041, 2006 WL 2052057, at *3 (N.D. Ill. May 3, 2006); *Caviness v. Evans*, 229 F.R.D. 354, 361 (D. Mass. 2005); *Halpert Ent., Inc. v. Harrison*, 362 F. Supp.2d 426, 433 (S.D.N.Y. 2005) ("The allegations that several of the Board members sit together, in various configurations, on other boards do not call into question the ability of the board members to exercise proper business judgment.").

Thus, the amended complaint fails to allege facts that show that the independence of a majority of the Omnicare board was compromised for purposes of the demand futility analysis. The complaint therefore must be dismissed without prejudice, and plaintiff may proceed to make a demand on the Omnicare board.[3]

---

[3] Should plaintiff make such a demand, the court would opine that six months would be a sufficient and reasonable time in which to expect a response from the board.

12

Therefore, having heard the parties, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that defendants' motion to dismiss (Doc. #13) be, and is hereby, **GRANTED**. A separate judgment shall enter concurrently herewith.

This 20th day of November, 2006.

*William O. Bertelsman*

**WILLIAM O. BERTELSMAN, JUDGE**

TIC: 37 min.

13